WRIGHT *v* SECO METALS, INC

1. EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY—VARYING TERMS OF INSTRUMENT—BILLS AND NOTES—PROMISSORY NOTES.

Evidence of a preliminary parol agreement is not competent, in the absence of fraud or mistake, to vary or contradict the unambiguous provisions of a promissory note.

2. BILLS AND NOTES—CORPORATIONS—CORPORATION'S PROMISSORY NOTE—PAROL EVIDENCE—ORAL PROMISE OF OFFICER—ADMISSIBILITY.

Evidence that an officer of a corporation orally promised personally to repay money loaned to the corporation is inadmissible, under the parol evidence rule, where the obligation to repay is evidenced by an unambiguous promissory note signed by the officer in his capacity as a corporate representative, because evidence of the oral promise would vary the terms of the obligation to repay in the promissory note (MCLA 440.3403[3]).

Appeal from Kent, John T. Letts, J. Submitted Division 3 November 3, 1971, at Grand Rapids. (Docket No. 10215.) Decided February 22, 1972.

Complaint by Wayne and Martha Wright and Dr. Gerald Kooistra against Seco Metals, Inc., and Maurice Hample for moneys due on promissory notes and against Maurice Hample, Delores Hample, and Martin Goulooze for wrongful distribution of corporate assets. Complaint amended at trial alleging an oral promise by Maurice Hample to pay

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 30 Am Jur 2d, Evidence § 1016 *et seq.*

money.  Judgment for plaintiffs against Seco
Metals, Inc., for moneys due on promissory notes;
judgment against Maurice Hample for moneys orally
promised.  Judgment for Delores Hample and Mar-
tin Goulooze.  Defendant Maurice Hample appeals
and plaintiffs cross-appeal.  Reversed as to judg-
ment against Maurice Hample for moneys orally
promised; remanded for determination of the issue
of wrongful distribution of corporate assets.

*Miller, Johnson, Snell & Cummiskey* (by *John W.
McNeil* and *Peter J. Kok*), for plaintiffs Wayne and
Martha Wright.

*Godfrey Vander Werff,* for plaintiff Kooistra.

*Wierenga & Sevensma,* for defendants Seco Me-
tals, Inc., Maurice Hample, and Delores Hample.

*Allaben, Massie, Vander Weyden & Timmer* (by
*Sam F. Massie, Jr.* and *Timothy I. Miner*), for
defendant Goulooze.

Before: R. B. BURNS, P. J., and LEVIN and T. M.
BURNS, JJ.

R. B. BURNS, P. J.  Seco Metals, Inc., was incor-
porated as a Michigan corporation on December 10,
1964.  Its articles authorized capital stock of 25,000
shares of no par common stock.  The book value and
the price fixed for sale was $1 per share.  Maurice
C. Hample, Delores M. Hample, and Martin Gou-
looze were named as incorporators.  Maurice Ham-
ple was elected president, Martin Goulooze was
elected vice-president, and Delores Hample was
elected secretary-treasurer.  The Hamples sub-

scribed to 800 shares of stock and Goulooze sub-scribed to 200 shares.

Hample and Goulooze were the company's only full time employees. Casual labor was hired as needed.

On December 21, 1964, Mrs. Wayne Wright delivered a cashier's check for $5,000 to Mrs. Hample. The check was made out to "Seco Metals, Inc.". On that same date a promissory note for $5,000 plus interest was executed, payable 36 months after date to Wayne and Martha Wright. The note was signed:

> "Seco Metals Inc.
> 7364 S. Division
> Grand Rapids 8, Mich.
> "/s/ Maurice C. Hample—
>     President
> "/s/ Martin J. Goulooze—
>     Vice-President
> "/s/ Delores Hample—
>     Secretary-Treasurer"

On January 8, 1965, a promissory note for $5,000 plus interest was executed, payable 36 months after date to Martin J. Goulooze. The note was signed:

> "SECO METALS, INC.
> /s/ Maurice C. Hample
> /s/ Delores M. Hample."

On February 8, 1965, a promissory note in the amount of $5,000 plus interest was executed on Seco letterhead, payable 36 months after date to Gerald B. Kooistra. This note was signed:

> "SECO METAL, INC.
> 7364 S. Division
> Grand Rapids 8, Michigan
> "/s/ Maurice C. Hample, President
>  /s/ Martin Goulooze, Vice-President
>  /s/ Delores M. Hample, Treasurer."

Mr. and Mrs. Hample loaned $1,000 to the corporation. No note was introduced evidencing this loan.

Account No. 38 of the general ledger showed a payment on August 31, 1965, of $500 principal to Martin Goulooze on his $5,000 loan to Seco. Account No. 39 recognizes a $400 payment of principal as of May 31, 1965, to Mr. and Mrs. Hample on their $1,000 loan. Account No. 37 shows no partial payment of the debt owed the Wrights, nor does Account No. 40 indicate any payment on the debt owed Dr. Kooistra. Defendant corporation admits failure to pay any portion of these latter two debts.

On December 23, 1964, Mrs. Wayne Wright wrote a check for $150 payable to "Seco Metals, Inc.". The notation, "Shares—1964", appeared on the check in Mrs. Wright's handwriting. On January 4, 1965, a certificate for 150 shares of stock in Seco was issued to the Wrights over the signatures of Delores M. Hample (Secretary) and Maurice C. Hample (President). Mr. and Mrs. Wright testified that they never received that certificate. The company's stock transfer book bears the signatures of Mr. and Mrs. Wright, acknowledging receipt of the certificate on September 1, 1965, and surrender of that same certificate on September 7, 1965. Mr. and Mrs. Wright identified their signatures.

On September 7, 1965, a check in the amount of $150 was drawn on Seco's account, payable to Wayne N. Wright. Account No. 51 of Seco's general ledger records a repurchase by the corporation from the Wrights of 150 of its own shares.

Mrs. Hample testified that on February 9, 1965, the corporation repurchased 600 of the 800 shares owned by the Hamples. Account No. 51 of the general ledger recognized this repurchase in two 300-share lots, but not until its entries of June 30 and July 30. The March 31 entry in that same account

recognizes a purchase by the corporation from Martin Goulooze of 100 shares of its own stock.

Several entries in the general ledger indicate, and the individual defendants concede, several substantial payments to Mr. Hample and Mr. Goulooze for salaries and travel expenses. The corporation also paid premiums for life insurance on the life of Mr. Hample.

Because of a change on the zinc market, Seco failed. As early as the March 15, 1965, board meeting, the company's financial difficulties were recognized. To economize Mr. Goulooze ceased working for Seco, although he retained his membership on the board and his position as vice-president. Mr. Hample's salary was reduced from $200 per week to $200 per month.

Mr. and Mrs. Wright and Dr. Kooistra brought suit against Seco and against Maurice C. Hample individually, for moneys due on the promissory notes of December 21, 1964, and February 8, 1965. Mr. Goulooze filed suit against Seco for the amount due on the promissory notes executed in his favor on January 8, 1965. Mr. Goulooze did not bring an action against Mr. Hample individually.

Mr. and Mrs. Wright and Dr. Kooistra also brought an action against Mr. and Mrs. Hample and Mr. Goulooze for wrongful distribution of corporate assets, *viz.*, payment of the personal expenses of individual defendants and redemption of the corporation's own stock. Plaintiffs requested that individual defendants be ordered to repay to the corporation all such wrongfully diverted funds and that the corporation be ordered to pay such funds to plaintiffs in discharge of its obligation on the promissory notes.

Plaintiffs also alleged that Seco did not have a corporate existence independent of Maurice C. Hample and that, therefore, Mr. Hample was personally liable for all obligations incurred in the name of the corporation.

At trial, with leave of the court, plaintiffs amended their complaint to *allege an oral promise by Maurice Hample,* independent of any promissory notes, to pay plaintiffs each $5,000 plus interest.

In its answer Seco conceded its liability to Mr. and Mrs. Hample, to Dr. Kooistra, and to Martin J. Goulooze. The individual defendants denied all of plaintiffs' allegations.

The case was tried without a jury. Over objection, the judge permitted submission by plaintiffs of parol evidence as to Maurice Hample's personal obligation on the promissory notes held by the Wrights and Dr. Kooistra.

The trial judge filed a written opinion granting judgment for plaintiffs against Seco and against Maurice C. Hample individually. The judgment against Seco was based on the company's admission of liability on the promissory notes. *Judgment against Mr. Hample was based on his oral promise to be personally obligated.* The judge granted judgment on all counts for defendants Delores Hample and Martin Goulooze.

In his opinion the judge made the following determinations of fact: (a) plaintiffs were induced to loan money to Mr. Hample by his promises to personally repay the loans; (b) disbursements for salaries, expense allowances, and insurance premiums were not improper; and (c) Seco Metals, Inc., was a *"bona fide* corporation". In his opinion the judge also ruled that the parol evidence rule and the statute of frauds were not applicable in the instant case.

He did not expressly determine whether the repurchase of stock and repayment of loans were improper disbursements.

Defendant Maurice Hample claims the trial court erred by admitting oral testimony to vary the terms of the written instruments.

MCLA 440.3403(3); MSA 19.3403(3) reads:

"Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity."

*Gorsche v First National Bank of Manistique*, 233 Mich 428, 439 (1926) states:

" 'Testimony of an oral contract is not admissible to vary the terms of a written contract whereby defendants, private bankers, undertook to transmit money to be deposited in plaintiff's name in a bank in Russia.'

"To hold that, in the absence of fraud or mistake, oral evidence of a preliminary parol agreement is competent to vary or contradict the unambiguous provisions of a foreign bill of exchange, would destroy a settled principle of the law-merchant approved by legislative and judicial wisdom of ages."

The trial court should not have allowed oral testimony which was so completely inconsistent with the written instruments. Therefore, the cause is reversed.

The trial judge did not expressly rule whether the repurchase of stock and repayment of loans were improper disbursements. The case is remanded to the trial court for such determination.

This case is reversed and remanded. Costs to defendants.

All concurred.