902 F.2d 32
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CAROLINA FREIGHT CARRIERS CORPORATION, Plaintiff-Appellant,
v.
Carlo GALUPPI and Irma Galuppi, a/k/a Erma Sue Galuppi,
Defendants-Appellees.
 No. 89-1539.
 United States Court of Appeals, Sixth Circuit.
 May 3, 1990.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a contract action that was brought in federal court on diversity of citizenship grounds. After declining to consider parol evidence offered, as the court believed, to change the meaning of written contract language that was not ambiguous, the court granted summary judgment for the plaintiff. Given the deference that must be accorded a district court's understanding of how the parol evidence rule would be applied under the law of the state in which the court sits, and given the existence of alternate grounds on which the summary judgment can be supported in this case, we are not prepared to hold that any reversible error occurred here. The judgment of the district court will be affirmed.
 
 
 2
 Plaintiff Carolina Freight Carriers Corporation entered into a written contract for the purchase from defendants Carlo and Irma Galuppi of a tract of land in Westland, Michigan. The parties entered into a separate agreement in which the Galuppis promised to construct a paved access road and install certain utilities. The work was to be done before September 1, 1987, and the Galuppis undertook to maintain the road until it was accepted by the City of Westland.
 
 
 3
 To secure their obligation to complete the access road, the Galuppis granted Carolina Freight a mortgage on an adjacent parcel for $175,000, the road's estimated construction cost. The mortgage gave Carolina Freight the right to demand payment of the $175,000, plus interest, if the Galuppis failed to perform their obligations under the agreement. None of the instruments contained an integration clause.
 
 
 4
 The Galuppis failed to construct the road and install the utilities, and Carolina Freight declared a default and demanded payment of $175,000, plus interest. The demand for payment was not met, and Carolina Freight brought suit.
 
 
 5
 The Galuppis admitted that they had failed to fulfill their contractual duties, that "all of the representations and agreements made between the parties are contained in the contractual agreements," and that the agreements "speak for themselves." In opposing Carolina Freight's motion for summary judgment, however, the Galuppis claimed that Carolina Freight told Mr. Galuppi at the time of the closing that the company would have the option of constructing the road itself and foreclosing on the mortgage to recover its costs. Mr. Galuppi claimed that he thought Carolina Freight would be required to do this.
 
 
 6
 The district court held that the terms of the written agreement were unambiguous, and that the Galuppi's assertions were not admissible to alter those terms. The court granted summary judgment to Carolina Freight in the amount of $175,000, plus interest.
 
 
 7
 "Even when no ambiguity appears on the face of a written agreement Michigan courts may receive extrinsic evidence to disclose ambiguity or to show that there is none." American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 422 (6th Cir.1984). In the case at bar, however, the Galuppis presented no evidence which, if accepted by the court, would have established an ambiguity. The existence of an ambiguity is a question of law. S.C. Gray, Inc. v. Ford Motor Company, 286 N.W.2d 34, 45 (Mich.App.1979). The mortgage agreement clearly provided that a failure by the Galuppis to perform their obligations under the companion agreement would constitute a default, and that upon default Carolina Freight could demand payment of $175,000 plus interest. Mr. Galuppi offered to show he was told that "Carolina Freight would have the option of doing the construction themselves" and that "Carolina Freight could then proceed to foreclose on the mortgage to pay off any construction costs." (Emphasis supplied.) Mr. Galuppi may have entertained a subjective belief that Carolina Freight was required to exercise this option, but such a belief can avail him nothing if it was not warranted by the words Carolina Freight actually used. See Michigan Chandelier Company v. Morse, 297 N.W. 64, 67 (Mich.1941). The record does not show Mr. Galuppi's understanding was warranted, in our opinion.
 
 
 8
 The Galuppis argue that Carolina Freight had a duty to mitigate damages. The district court concluded, however, that the terms of the mortgage were equivalent to a liquidated damages clause. It is not apparent that this conclusion was erroneous under Michigan law. A contractual provision for liquidated damages is nothing more than an agreement by the parties fixing the amount of damages in case of a breach. Papo v. Aglo Restaurants of San Jose, Inc., 386 N.W.2d 177, 181 (Mich.App.1986). A provision for liquidated damages is valid if it is reasonable, Curran v. Williams, 89 N.W.2d 602, 604 (Mich.1958), and there was no showing of unreasonableness here. The provision may even work to the Galluppis' advantage, because $175,000 plus interest is all that Carolina Freight can recover, regardless of what damages may actually have arisen from the Galuppis' breach of their contractual obligations.
 
 
 9
 The Galuppis assert, in conclusory fashion, that Carolina Freight could have constructed the road for less than $175,000, but they point to no evidence in support of this assertion. Even if Carolina Freight had a duty to mitigate, the burden of proving a breach of the duty would rest with the Galuppis. Gorman v. Soble, 328 N.W.2d 119, 127 (Mich.App.1982). Summary judgment would be appropriate in any event, absent a showing of a factual issue as to whether Carolina Freight could build the road for less than the stipulated amount. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).
 
 
 10
 The judgment of the district court is AFFIRMED. Carolina Freight's motion for damages for delay is DENIED.
 
 
 11
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 12
 I respectfully dissent. Though the Roadway and Utilities Agreement and the Second Mortgage Agreement are arguably clear and unambiguous on their face, Michigan authority has clearly, and repeatedly, held that parol evidence is nevertheless admissible absent an integration clause.
 
 
 13
 Pursuant to the clear and controlling pronouncements of the Michigan Supreme Court, it is plain that the district court was not obligated to find evidence of facial ambiguity in the contract prior to considering extrinsic evidence of intent herein. Indeed, ... the intent of the parties to integrate "prior or contemporaneous agreements or negotiations" is a "threshold" issue to interpreting an agreement. Simply stated, the identity of the full agreement must be ascertained prior to any interpretation of that agreement.
 
 
 14
 Sawyer v. Arum, 690 F.2d 590, 594 (1982). See also Central Transp., Inc. v. Fruehauf Corp., 139 Mich.App. 536, 544 (1984); Omega Constr. Co. v. Murray, 129 Mich.App. 509, 514-15 (1983).
 
 
 15
 Accordingly, I believe that the district court erred by not allowing the Galuppis to introduce parol evidence to support their contention that the documents did not constitute the complete expression of their agreement with Carolina Freight. I would therefore remand this action to the district court to ascertain whether the parties intended the written instruments to be the complete expression of their agreement.
 
 
 16
 Furthermore, after carefully reviewing the roadway and mortgage agreements, I conclude that no liquidated damages provision exists in this action. The Roadway and Utilities Agreement merely estimates the cost to complete the Galuppis' obligation, it does not stipulate a liquidated damages figure automatically owing upon Galuppis' breach. Specifically, the Roadway Agreement authorizes Carolina Freight to "exercise any remedies which it may have at law or under the mortgage in order to assure the completion of the construction of the Access Road." Such wording clearly belies Carolina Freight's liquidated damages assertion. Similarly, the Second Mortgage Agreement merely secures the obligation "in accordance with the Roadway and Utilities Agreement" between the parties. Accordingly, I would instruct the district court to ascertain the damages incurred by Carolina Freight irrespective of the $175,000 provision written into the agreements.